IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2005 MAY 23  P 4: 41

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| ROBERT BOWEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN MEDICAL SECURITY, INC., )<br>et al., )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 3:05cv487 |

## NOTICE OF REMOVAL

**COME NOW** defendants American Medical Security, Inc. ("AMS") and United Wisconsin Life Insurance Company ("UWLIC")[1] (collectively the "Removing Defendants"), by and through their counsel of record, and pursuant to 28 U.S.C. § 1441, as amended, hereby give notice of the removal of this action to the United States District Court for the Middle District of Alabama, Eastern Division. As grounds for this removal, the Removing Defendants state as follows:

1.   On or about January 31, 2005, Robert Bowen ("Plaintiff") commenced a civil action against the Removing Defendants, AmSouth Bank ("AmSouth" or the "Resident Defendant"), and various fictitious defendants in the Circuit Court of Macon County, Alabama, now pending as Civil Action No. CV-05-21. The Circuit Court of Macon County, Alabama is a state court within this judicial district and division.

---

[1] AMS and UWLIC have now merged and the combined entity is known as American Medical Security Life Insurance Company.

1361234

2. A copy of all other process, pleadings or orders served to date on the Defendants is attached hereto as Exhibit A.

3. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides in pertinent part as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

4. Plaintiff filed the original Complaint on January 31, 2005. (Complaint, Exh. A). Plaintiff then filed the First Amended and Restated Complaint on April 14, 2005. (1st Amended Complaint, Exh. A). Plaintiff subsequently filed his Second Amended and Restated Complaint on May 10, 2005. (2nd Amended Complaint, Exh. A). Plaintiff requested "such sum of compensatory damages as the jury may assess after a fair and accurate consideration of the facts of this cause" and did not specify the actual amount of damages sought. (Id. at p. 15).

5. Because Plaintiff failed to specify his damages, the Removing Defendants served requests for admission on Plaintiff regarding the amount in controversy. (See Discovery, Exh. B). In his April 22, 2005 responses to the requests for admission, Plaintiff made clear that he seeks more than $75,000 in damages in this case. (Id.). These discovery responses were the first notice that the Removing Defendants received that the amount in controversy was met in this

case pursuant to 28 U.S.C. § 1441. The requests for admission responses constitute "other paper" from which the Removing Defendants ascertained that this case was removable.

6.   This Notice of Removal is timely because it is filed within thirty (30) days of the receipt of the "other paper", and because this action was commenced less than one (1) year ago. See Golden Apple Management Co., Inc. v. GEAC Computers, Inc., 990 F.Supp. 1364, 1366 (M.D. Ala. 1998) ("The court agrees with [defendant] that plaintiff's responses denying the requests for admission that the full measure of plaintiff's damages in this action is $75,000 or less and that plaintiff cannot recover more than $75,000 in compensatory and/or punitive damages is 'other paper' which advised [defendant] that the amount in controversy satisfied the minimum requirement for diversity of citizenship jurisdiction, and that the action was, therefore, removable.") (citing Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). Further, in Robinson v. GE Capital Mortgage Serv., Inc., the Middle District of Alabama denied plaintiff's motion to remand and found that the defendants' notice of removal, which was filed within 30 days of defendants' receipt of plaintiff's request for admission responses regarding the amount in controversy, was timely. 945 F.Supp. 1516 (M.D. Ala. 1996). The court specifically stated that "[t]his court will not allow a trap to be set by a plaintiff filing a complaint in state court claiming an unspecified amount of damages and then objecting to a removal as being untimely when a defendant removes within 30 days after ascertaining that the claim actually exceeds the jurisdictional amount." Id. at 1518.

7.   This case is properly removable pursuant to 28 U.S.C. § 1441, which provides in pertinent part as follows:

> (a)   Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district

court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b)   Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

8.   As explained in detail below, this case is properly removable because the Resident Defendant has been fraudulently joined and diversity jurisdiction exists under 28 U.S.C. § 1441(a) and (b).

## DIVERSITY OF JURISDICTION

9.   This action is removable under 28 U.S.C. § 1441(a) and (b) because the United States District Court has original jurisdiction of this case under 28 U.S.C. § 1332(a), as amended, which provides in pertinent part as follows:

(a)   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -

(1)   citizens of different States . . . .

10.   There is only one named plaintiff in this action. Plaintiff is a resident citizen of the State of Alabama. (2nd Amended Complaint, ¶ 1, Exh. A).

11.   There are three (3) named Defendants in this action. Removing Defendants AMS and UWLIC were formerly separate foreign corporations doing business in Alabama. (Id. ¶ 2). AMS and UWLIC have now merged into one new entity, American Medical Security Life Insurance Company, which is also a foreign corporation doing business in Alabama.

12. Resident Defendant AmSouth, who has been fraudulently joined, is an Alabama corporation doing business in the State of Alabama. (Id. ¶ 3).

13. Plaintiff has attempted to destroy diversity by fraudulently joining the Resident Defendant. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), overruled on other grounds, (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 37 (1921)), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), cert. den., 106 U.S. 371 (2000).

14. The Resident Defendant was fraudulently joined to destroy diversity. It is well-settled that the Court must disregard nominal or formal parties and determine jurisdiction based only upon the citizenship of the real parties to the controversy. Navarro Savings Ass'n v. Lee, 446 U.S. 458, 100 S. Ct. 1779 (1980). Fraudulent joinder of a resident defendant exists if a plaintiff does not intend to prosecute the action against that defendant in good faith. Wilson, 257 U.S. at 94, 42 S. Ct. at 36. Such joinder, used as a device to prevent the defendant from exercising its right of removal, will not be treated as a legal obstacle to retention of the cause by the district court. Id. 257 U.S. at 98, 42 S. Ct. at 38; Bullock v. United Ben. Ins. Co., 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001) ("When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based on diversity of citizenship").

15. Plaintiff alleges that he purchased major medical insurance coverage with AMS in November 1995.[2] (2nd Amended Complaint, ¶ 5, Exh. A). The subject health insurance policy

---

[2] AMS provides administrative services to UWLIC. These services include marketing and implementing the MedOne coverage at issue. As a result, the coverage is sometimes referred to herein as being provided "through" or "with" AMS.

1361234

5

was established as an Alabama discretionary trust called "Prescription for Good Health Trust" (hereinafter "the Trust"). (Id. ¶ 6). Resident Defendant "AmSouth served as trustee for said trust and as the primary policy owner of the group health policy of which Plaintiff was a participant." (Id.).

16. The basis of Plaintiff's complaint is that while his insurance "was sold on the basis of it being a group policy, said Defendants did and would assess premiums and/or increases in premiums on the basis of individual risk factors. Further, said Defendants did fail and/or refuse to inform the Plaintiff that said premiums could be raised to such high levels that the Plaintiff would be forced to terminate the policy....." (Id. ¶ 7). Plaintiff alleges that "Defendants...did raise the Plaintiff's premium rates. The Plaintiff's monthly premium rate in November of 1995 was $89.48, and was increased in November of 1996 to $109.74. The premiums were raised to such a high level that the Plaintiff was no longer able to afford said coverage and was forced to cancel the policy." (Id. ¶ 8). Specifically, Plaintiff's policy was terminated on April 30, 1997. (Policy Data Page, Exh. C). Plaintiff's insurance coverage was in force for only 18 months, from November 1995 through April 1997. Plaintiff's health insurance premiums increased over this period of time, but were never more than $109.74 per month, which is the amount Plaintiff paid from November 1996 through April 1997.

17. The crux of Plaintiff's claims is that the premiums charged for his group health insurance were improperly calculated based on "individual" factors. However, AmSouth's responsibilities and duties with respect to the group health insurance at issue are embodied in the Prescription for Good Health Trust Agreement (hereinafter "the Trust Agreement") and, under that agreement, AmSouth has no responsibility for administration of the health coverage at issue. (Trust Agreement, Exh. D). The Trust Agreement specifically states that "Trustee [AmSouth]

1361234                                6

will be the holder, owner and custodian of the contracts, but will not perform any administrative duties or responsibilities for such contracts. Such duties and responsibilities shall be delegated to a third party administrator designated by [UWLIC] to perform such administrative duties." (Id. at p. 1).[3] Therefore, AmSouth has no involvement in, or authority over, the establishment of group health insurance rates, premiums or the terms of the group health insurance policies themselves. (Id.).

18. The Second Amended Complaint fails to make a single substantive allegation specific to the Resident Defendant other than to note that it is the trustee of the Trust and to allege that it breached its fiduciary duty to Plaintiff. (2nd Amended Complaint, ¶¶ 38-48, Exh. A) (Counts Eight and Nine). Otherwise, Plaintiff's claims are alleged against all of the Defendants without differentiating between the Removing Defendants, who had the authority to assess and/or change Plaintiff's premiums, and the Resident Defendant, who did not. (Id. ¶¶ 5-37).

19. The Second Amended Complaint asserts two (2) specific claims against Resident Defendant AmSouth for breach of fiduciary duty. (Id. ¶¶ 38-48) (Counts Eight and Nine). These claims fail because they are barred by the statute of limitations. The Second Amended Complaint also contains the following counts against all Defendants, including AmSouth: (i) breach of contract, (ii) fraud, (iii) fraudulent concealment, (iv) conspiracy, (v) negligent and/or wanton conduct. (Id. ¶¶ 5-37). Each of these claims is groundless as applied to Resident Defendant AmSouth. As explained supra paragraph 17, the Resident Defendant did not have any authority to administer Plaintiff's health insurance coverage, assess premiums, and/or raise the Plaintiff's health insurance premiums. (Trust Agreement, Exh. D). Furthermore, Plaintiff's

---

[3] The Trust Agreement designates UWLIC as the insurer and AMS as the administrator of the heath insurance coverage at issue. (Trust Agreement, p. 2, Exh. D).

breach of contract, fraud, fraudulent concealment, conspiracy, and negligent and/or wanton conduct claims fail because the statute of limitations periods have expired. The conspiracy claim also fails for lack of an underlying claim.

### *Plaintiff's Breach Of Fiduciary Duty Claims Are Barred By The Statute Of Limitations:*

20. Plaintiff claims that AmSouth breached both its common law fiduciary duty and its fiduciary duty under the Trust. (2nd Amended Complaint, ¶¶ 38-48, Exh. A) (Counts Eight and Nine). Plaintiff's claim that AmSouth owes him a fiduciary duty outside or beyond the Trust is without merit because Plaintiff fails to cite any facts that would establish that a common law confidential relationship existed between himself and AmSouth. Specifically, Plaintiff did not repose trust or confidence in AmSouth, there was no intimate personal and business relationship between Plaintiff and AmSouth, and AmSouth did not have any superiority over Plaintiff. See Kite v. Kite, 444 So. 2d 863, 865 (Ala. Civ. App. 1983).

21. Further any claim for breach of fiduciary duty is barred by Alabama's two (2) year statute of limitations. Norman v. Occupational Safety Association of Alabama Workmen's Compensation Fund, 811 So. 2d 492, 497 (Ala. 2001); ALA. CODE § 6-2-38(l). Specifically, the statutory limitations period allowed on a claim of breach of fiduciary duty in regard to a trust begins to run on the date of the termination of the trust. McCormack v. AmSouth Bank, N.A., 759 So. 2d 538, 542-43 (Ala. 1999) (citing Tonsmeire v. AmSouth Bank, 659 So. 2d 601, 604 (Ala. 1995)).

22. Plaintiff's policy became effective November 1, 1995 and was terminated on April 30, 1997. (Policy Data Page, Exh. C). Because Plaintiff's policy terminated in 1997, his relationship with AmSouth and the Trust necessarily ended in 1997. Plaintiff filed his original Complaint on January 31, 2005, seven (7) full years after his policy terminated. The two (2)

years statute of limitations has long since expired and Plaintiff's fiduciary duty claims against AmSouth are barred. ALA. CODE § 6-2-38(l).

23. Counts Eight and Nine are the only claims asserted solely and directly against Resident Defendant AmSouth. (2nd Amended Complaint, Exh. A). The remaining allegations in the Second Amended Complaint are asserted against all Defendants and fail to differentiate between and amongst them in any way. The Court need look no further than the breach of fiduciary duty claims because the remaining claims are insufficiently pled against AmSouth and are, in fact, properly directed only to Defendants AMS and UWLIC. However, in an abundance of caution, the Removing Defendants show below that each and every one of the remaining counts fails to state a claim against AmSouth.

### *Plaintiff's Remaining Tort Claims Are Also Barred By The Statute Of Limitations:*

24. Plaintiff's claims against Resident Defendant AmSouth all relate to actions that took place at the point of sale of the policy, which occurred in 1995, or at the time that Plaintiff's premiums were raised in November 1996. (2nd Amended Complaint, ¶ 8, Exh. A). Plaintiff's remaining tort claims for fraud, fraudulent concealment, conspiracy, and negligent and/or wanton conduct are barred by the applicable statutes of limitations. The limitations period for fraud, fraudulent concealment, conspiracy, and negligent and/or wanton conduct is two (2) years. ALA. CODE § 6-2-38.

25. ***Negligence & Wantonness:*** The statute of limitations for negligence and wantonness actions begins to run from the date the injury occurred. Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1274 (Ala. 1993). Since Plaintiff claims to have been harmed at the point of sale in 1995 and when his premiums were increased in November 1996, the statute began to run, at the latest, in November 1996. (2nd Amended Complaint, ¶ 8, Exh. A). "There is, however, no 'discovery rule' to toll the running of the limitations period with respect to

negligence or wantonness actions; the 'discovery rule' in Alabama is applicable only to fraud actions." Henson, 621 So. 2d at 1274 (citing ALA. CODE § 6-2-3). Therefore, Plaintiff's claims for negligence and wantonness against AmSouth expired in November 1998, over six (6) years before he filed his original Complaint in January 2005.

26. ***Fraud & Fraudulent Concealment:*** Alabama law further provides that the statute of limitations for fraud commences "once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." Kelly v. A.L. Williams Corp., 669 F. Supp. 1058, 1062 (N.D. Ala. 1986). The standard for accrual of fraud claims is objective, and the statute of limitations begins to run once facts are known or available to the plaintiff which would lead to the discovery of the fraud in the exercise of reasonable diligence. ALA. CODE § 6-2-3; Boros v. Palmer, 472 So. 2d 1020, 1023 (Ala. 1985) ("[F]acts constituting the fraud are to be considered discovered when they ought to be discovered, when such facts come to knowledge as to provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud."); Phillips v. Amoco Oil Co., 799 F. 2d 1464, 1469 (11th Cir. 1986). An identical standard applies to claims for fraudulent concealment. See Davant v. United Land Corp., 896 So. 2d 475, 490 (Ala. 2004).

27. Moreover, it is the affirmative burden of the party alleging fraud to prove his lack of notice in order to toll the statute of limitations. Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co., 792 F. 2d 1036, 1043 (11th Cir. 1986) ("The burden was squarely on [plaintiff] to prove that it was unaware of facts that would lead a reasonable person to suspect fraud."); Johnson v. Shenandoah Life Ins. Co., 281 So. 2d 636, 642 (Ala. 1973) (Plaintiff must show what prevented discovery of the fraud before the bar of the statute of limitations was complete and must acquit himself of all knowledge of facts which ought to put him on inquiry.). Similarly, to

sustain a claim of fraudulent concealment Plaintiff must prove, among other elements, "'concealment or nondisclosure of material facts by the defendant.'" Auto-Owners Ins. Co. v. Abston, 822 So. 2d 1187, 1197 (Ala. 2001) (quoting Foremost Ins. Co. v. Parham, 693 So. 2d 409, 423 (Ala. 1997)).

28.     Here, Plaintiff claims to have been harmed at the point of sale in 1995 and when his premiums were increased in November 1996. (2nd Amended Complaint, ¶ 8, Exh. A). Plaintiff alleges that his "premiums were raised to such a high level" that he was "forced to cancel the policy" in April 1997. (Id.; Policy Data Page, Exh. C). Plaintiff was put on notice as many as seven (7) years ago, when his premiums increased in November 1996 and he was allegedly forced to cancel the policy in April 1997, "that a fraud may have been perpetrated." A.L. Williams Corp., 669 F. Supp. at 1062. Plaintiff's fraud and fraudulent concealment claims are, therefore, barred by the statute of limitations.[4]

29.     **_Conspiracy:_** The limitations period for conspiracy "begins to run when the statutory period of limitation for the underlying tort begins to run." Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101, 126 (Ala. 2003). As with Plaintiff's claims for fraud, fraudulent concealment, negligence and/or wantonness, Plaintiff's conspiracy claim began to run seven (7) years ago, when his premiums increased and he was allegedly forced to cancel

---

[4] Plaintiffs' claims against AmSouth are also improper for the additional reason that Plaintiff inadequately identified the persons responsible for the alleged fraud and concealment in his Complaint or any of the amended Complaints. It is well-settled that:

> **Courts interpret Rule 9(b) as requiring a complaint filed against multiple defendants to distinguish among defendants and specify their respective role in the alleged fraud.** The courts reason that because fair notice is perhaps the most basic consideration underlying Rule 9(b), a plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme. **Accordingly, a plaintiff does not satisfy this requirement by simply grouping the defendants together by vaguely alleging that the "defendants" [committed fraud].**

McAllister Towing & Transportation Co. v. Thorn's Diesel Service, Inc., 131 F. Supp. 2d 1296, 1301 (M.D. Ala. 2001) (citations omitted) (emphasis added).

the policy. In addition to being barred by the statute of limitations, Plaintiff's conspiracy claim fails for lack of an underlying claim. Barber v. Business Prods. Center, 677 So. 2d 223, 228 (Ala. 1996); Baker v. Hanks, 661 So. 2d 1155, 1157 (Ala. 1995) ("A conspiracy claim must fail if the underlying act itself does not support an action."); McLemore v. Ford Motor Co., 628 So. 2d 548, 550 (Ala. 1993) ("conspiracy itself furnishes no cause of action.").

### *Plaintiff's Breach Of Contract Claims Are Barred By The Statute Of Limitations:*

30.     Counts One and Five of Plaintiff's Second Amended Complaint allege that Defendants AMS, UWLIC, and AmSouth breached Plaintiff's contract by increasing Plaintiff's premiums "based upon individual factors, such as a routine medical treatment claims." (2nd Amended Complaint, ¶ 25, Exh. A). Plaintiff's breach of contract claim fails on the merits because AmSouth was not a party to the Plaintiff's contract with Resident Defendant UWLIC and AmSouth did not have the ability to rate Plaintiff's health insurance or to raise his premiums. (Trust Agreement, Exh. D). It is axiomatic that "'[w]here there is no contract, there can be no breach of contract.'" Thomas Learning Center, Inc. v. McGuirk, 766 So. 2d 161, 166 (Ala. Civ. App. 1998) (quoting Trevino & Gonzalez Co. v. R.F. Muller Co., 949 S.W.2d 39, 42 (Tex. App. 1997)). However, even if AmSouth was a party to Plaintiff's contract, which it was not, Plaintiff's breach of contract claims are barred by Alabama's six (6) year statute of limitations for such claims. ALA. CODE § 6-2-34(9).

31.     Plaintiff alleges that his contract was breached when his premiums were raised, which occurred in November 1996. (2nd Amended Complaint, ¶ 8, Exh. A). Furthermore, Plaintiff **terminated** his insurance coverage, and any contract related to that coverage, in 1997. (Policy Data Page, Exh. C). Therefore, at the latest, Plaintiff's breach of contract claim expired six (6) years later in 2003, well before Plaintiff filed his original Complaint in January 2005. See Bay Lines, Inc. v. Stoughton Trailers, Inc., 838 So. 2d 1013, 1020 (Ala. 2002) ("The contracts to

which Bay Lines alleges it was a third-party beneficiary were contracts for the sale of the panels to Stoughton; those contracts were all completed before May 1993. The claims filed in January 2000 were, therefore, more than six years after the dates of the completion of the contracts and were therefore time-barred."). Moreover, there is no discovery rule for breach of contract claims. See Henson, 621 So. 2d at 1274 (the "discovery rule" applies only to fraud claims).

***Plaintiff's Claims Against Fictitious Parties Are to be Disregarded:***

32.  Plaintiff also alleges causes of action against fictitious defendants. Pursuant to 28 U.S.C. §1441(a), the citizenship of fictitious defendants must be disregarded, as they have been sued under fictitious names.

33.  Based on the foregoing facts, there is no possibility that Plaintiff can establish a cause of action against Resident Defendant AmSouth, and therefore, the joinder of Resident Defendant AmSouth is fraudulent. Consequently, it is evident that complete diversity of jurisdiction exists between the Plaintiff and the only properly-joined defendants, AMS and UWLIC.

***Plaintiff Admits That The Amount In Controversy Is Met:***

34.  The Removing Defendants propounded requests for admission to Plaintiff on April 18, 2005, asking Plaintiff, in part, to "admit that you are not seeking compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case." (Discovery, Exh. B). Plaintiff responded on April 22, 2005, denying all of the requests for admissions, thereby asserting that he seeks more than $75,000.00 in this case. (Id.). The amount in controversy is, therefore, met. See Golden Apple Management, 990 F.Supp. at 1366 ("The court agrees with [defendant] that plaintiff's responses denying the requests for admission that the full measure of plaintiff's damages in this action is $75,000 or less and that plaintiff cannot recover more than $75,000 in compensatory and/or punitive damages is 'other paper' which advised

1361234                                    13

[defendant] that the amount in controversy satisfied the minimum requirement for diversity of citizenship jurisdiction, and that the action was, therefore, removable.").

35. Furthermore, the Eleventh Circuit Court of Appeals explained in <u>Burns v. Windsor Ins. Co.</u>, that "great weight" is given to plaintiff's assessment of the value of plaintiff's case when determining diversity and removal jurisdiction. 31 F.3d 1092, 1094 (11th Cir. 1994); see also 32A AM. JUR. 2D FEDERAL COURTS § 1208 ("As a general principle, the amount claimed by the plaintiff controls in determining whether jurisdiction lies in the federal courts"). Furthermore, <u>Burns</u> also explained that "[e]very lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal. So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth." <u>Burns</u>, 31 F.3d at 1095.

36. This Court and the Removing Defendants are entitled to rely on the statements made in the request for admission responses, which were signed by Plaintiff's counsel. (Discovery Responses, Exh. B). The amount in controversy is, therefore, met.[5]

37. This case is a civil action within the meaning of the Acts of Congress relating to the removal of causes.

38. The Removing Defendants have heretofore sought no similar relief.

---

[5] The amount in controversy in this action clearly exceeds the sum or value of $75,000.00 exclusive of interest and costs. Plaintiff alleges numerous tort claims, including fraud, fraudulent concealment, negligent and/or wanton conduct, and conspiracy, with accompanying requests for compensatory and punitive damages. Plaintiff also claims to have suffered mental anguish. Furthermore, verdicts well in excess of $75,000.00 have been rendered against corporate defendants, particularly out-of-state corporations, in similar actions. See, e.g., <u>Gallant v. Prudential Ins. Co. of Am.</u>, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); <u>Talent Tree Personnel Serv., Inc. v. Fleenor</u>, 703 So. 2d 917, 922-23 (Ala. 1997) (awarding $300,000 in compensatory damages for alleged fraudulent misrepresentation); <u>First Commercial Bank v. Spivey</u>, 694 So. 2d 1316, 1326 (Ala. 1997) (awarding $450,000 in compensatory damages for emotional distress arising from the defendant's fraudulent conduct).

39. A copy of this notice is being filed with the Clerk of the Circuit Court of Macon County, Alabama, as provided under 28 U.S.C. § 1446. The Removing Defendants are also giving prompt written notice to the Plaintiff of the filing of this Notice of Removal.

**WHEREFORE**, the Removing Defendants request that this Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Macon County, Alabama to the United States District Court for the Middle District of Alabama, Eastern Division.

DATED this 23rd day of May, 2005.

*/s/ C. Hancock*
Ricky J. McKinney (MCKIR6539)
D. Brian O'Dell (ODELD2628)
Christian W. Hancock (WATSC8651)
BURR & FORMAN, LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

James E. Fleenor, Jr.
Harlan F. Winn, III
Michael J. Clemmer
BATTLE FLEENOR GREEN WINN
  & CLEMMER, LLP
The Financial Center
505 North 20th Street, Suite 1150
Birmingham, Alabama 35203
Telephone: (205) 397-8162
Facsimile: (205) 397-8179

Attorneys for Defendants
AMERICAN MEDICAL SECURITY, INC.,
UNITED WISCONSIN LIFE INSURANCE
COMPANY, AND AMSOUTH BANK.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following counsel of record by placing same in the United States mail, postage prepaid, addressed as follows:

Ted L. Mann, Esq.
Mann, Cowan & Potter, P.C.
Suite 601
2000-B SouthBridge Parkway
Birmingham, Alabama 35209

On this the 23rd day of May, 2005.

*C. Hancock*
OF COUNSEL

1361234                          16