**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

ROBERT BOWEN,                                  )
                                               )
             Plaintiff,                        )
                                               )
v.                                             )          CIVIL ACTION NO.:
                                               )           3:05-cv-487-CSC
AMERICAN MEDICAL SECURITY, INC.,               )
et al.,                                        )
                                               )
             Defendants.                       )

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND**

COMES NOW the Plaintiff, Robert Bowen, and files this Brief in Support of Motion to

Remand.  Plaintiff adopts and incorporates the Introductory Statement of Facts/Procedural History

and Requirements for Establishing Federal Jurisdiction in its Motion to Remand.

**I.    REQUIREMENTS FOR ESTABLISHING FEDERAL JURISDICTION**

In removing an action to federal court, the Defendants bear the burden of properly

establishing federal jurisdiction.  *Diaz v. Shepherd*, 85 F.3d 1502 (11th Cir. 1996).  In the event the

Plaintiff is able to raise any doubt with regard to the propriety of removal, then that doubt must be

resolved in favor of remand.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *see also*

*Diaz,* 85 F.3d at 1505.  Moreover, "remand is favored where federal jurisdiction is not absolutely

clear."  *Lambert v. Mail Handlers Benefit Plan*, 886 F. Supp. 830, 832 (M.D. Ala. 1995).  "Subject

matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power.  Whether

raised by the litigants or not, the federal courts, including appellate courts, are duty bound to

determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting."  *Eagerton*

*v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983).

Given that the Defendants have raised the issue of fraudulent joinder, it is the burden of these Defendants to establish that there is "no possibility that the Plaintiff can establish a cause of action against the resident Defendant. . . ." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). This burden has been described as "a heavy one." *Id.* "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) The standard governing the propriety of removal with regard to fraudulent joinder was properly stated in *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1989):

> If there is a *possibility* that a state court would find that the Complaint states a cause of action against any one of the resident Defendants, the federal court must find that the joinder is proper and remand the case to the state court(emphasis added).

The U. S. District Court for the Middle District of Alabama described a defendant's burden of demonstrating fraudulent joinder in *Bromberg v. Metropolitan Life Ins. Co.*, 50 F. Supp.2d 1208, 1213 (M.D. Ala. 1999) and stated:

> The fact that the Plaintiffs may not ultimately prevail against the individual Defendants because of an insufficient causal link between the Defendant's actions and the Plaintiffs' injuries does not mean that the Plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a Plaintiff's claim beyond determining whether it is an arguable one under state law.

Remand is favored where federal jurisdiction is not absolutely clear. *Lambert v. Mail Handlers Benefit Plan*, 886 F.Supp. 830 (M.D. Ala. 1995). The Defendants must establish by clear and convincing evidence that the Plaintiff has no possibility of establishing a cause of action against AmSouth. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989); *see also, Lane v.*

*Champion Int'l. Corp.*, 827 F.Supp. 701 (M.D. Ala. 1993).

In evaluating whether this Court has jurisdiction under the removal statutes, the Court should not evaluate the merits of the Plaintiff's underlying claims but rather should look to whether the Complaint states a colorable claim against the nondiverse Defendant. *C.C. Industrial, Inc. v. ING-Reliastar Life Ins. Co.*, 266 F.Supp.2d 813 (N.D. Ill. 2003); *see also Mattie Wright v. Metropolitan Life Ins. Co.,* CV-99-T-1241-N (released Nov. 23, 1999). It has been stated that the Plaintiff need not have a winning case to defeat removal jurisdiction. A federal court must be certain of its jurisdiction before embarking on a "safari" in search of judgment on the merits. *Tran v. Waste Mgt.*, 290 F.Supp.2d 1286 (M.D. Fla. 2003).

In trying to establish removal jurisdiction, a defendant cannot use as a basis for a fraudulent joinder argument a defense that is common to the diverse and nondiverse defendants. *Shady v. Arentis Pasteur*, 254 F.Supp.2d 509 (M.D. Pa. 2003); *see also Huckaby v. Gans & Smith Ins. Agency, Inc.*, 293 F.Supp.2d 715 (E.D. Tex. 2003). In other words, the party removing the action on the basis of diversity by use of a fraudulent joinder plea cannot argue that the claims against the nondiverse defendant are meritless when the same claims are made against the diverse defendants in an identical setting. In *Mattie Wright v. Metropolitan Life Ins. Co.*, CV-99-T-1241-N, Judge Thompson addressed this very issue and stated:

> Here, the contention – the fact that the claims were so weak or even meritless reflects the right sought to join Stinson with specific intent to defeat removal jurisdiction – is undermined by what would be the additional fact that Wright brings the same weak or meritless claims against Metropolitan Life. In other words, Wright brings the same so-called weak or meritless claims against both the resident Defendant (Stinson) and a nonresident Defendant (Metropolitan Life). Thus, the fact that Wright's case against Stinson may be weak or meritless tells us nothing regarding "why" a state resident was joined as a Defendant because Wright's case against Metropolitan Life is equally as weak or meritless.

The test to determine whether this Court has proper jurisdiction is to determine whether the amount in controversy has been met and whether the Plaintiff has stated a cause of action (whether or not he will prevail) against a nondiverse defendant. A defendant is not fraudulently joined if the claim and the recovery is debatable even if the state court might dismiss the claim on summary judgment or refuse to award damages. *El Dorado Springs R-2 School District v. Moos*, 264 F.Supp. 814 (D.C. Mo. 1967).

## II.     SUMMARY OF DEFENDANTS' ARGUMENTS IN SUPPORT OF REMOVAL

In this case, the Defendants have asserted that the $75,000 jurisdictional limit of this Court has been established and that AmSouth has been fraudulently joined. The Plaintiff asserts that the Defendants' basis for removal is defective and not well taken based on the following argument.

## III.     ARGUMENTS IN SUPPORT OF REMAND

### A.     The Defendants' Removal is Untimely

28 U.S.C. § 1446(b) provides, in part, that:

The Notice of Removal of a civil action or proceeding shall be filed within thirty (30) days after the receipt of the Defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty (30) days after the service of Summons upon the Defendant if such initial pleading has then been filed in Court and is not required to be served on the Defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a Notice of Removal may be filed within thirty (30) days after receipt by the Defendant, through service or otherwise, of a copy of an amended pleading, motion, Order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by § 1332 of this title more than one (1) year after commencement of the action.

4

The time limits in § 1446(b) are "***mandatory and must be strictly applied***." *Webster v. Dal United Tex Composite Prods., Inc.*, 925 F. Supp. 727, 729 (M.D. Ala. 1996) (emphasis added). In *Webster,* the Court stated that the purpose of the time limitations within § 1446 were to permit "the removal period to begin only after the defendant is able to ascertain intelligently that the requisites of removal are present." 925 F. Supp. at 729 (*quoting First National Bank v. Johnson & Johnson*, 455 F. Supp. 361, 362 (E.D. Ark. 1978)). It has been held that "the burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion." *Naef v. Masonite Corp.,* 923 F. Supp. 1504 (S.D. Ala. 1996) (*quoting Kaneshiro v. North America Company for Life and Health Ins.,* 496 F. Supp. 452, 462 (D. Haw. 1980)).

It is the Defendants' obligation to determine from the initial Complaint whether the amount in controversy has been met. In *Wise v. Bayer*, 281 F.Supp.2d 878 (W.D. La. 2003), the district court held that the defendant's removal was untimely because the plaintiff's complaint for unspecified damages that claimed a recovery for "pain, suffering and lifetime medical care" would place the defendant on notice that the claim might very likely exceed the jurisdictional limits of federal court. The time limits of 28 U.S.C. § 1446(b) are mandatory and are to be strictly complied with and narrowly construed against removal. *United States Exrail Walker v. Gunn*, 511 F.2d 1024 (9th Cir. 1975), *cert denied* 423 U.S. 849, 46 L.Ed.2d 72, 96 S.Ct. 91.

An analysis of this case demonstrates with clarity that the Defendants' removal of this case is untimely under § 1446(b). This action was filed on January 31, 2005. The Defendants AMS, UWL and AmSouth were served on February 2, February 5 and February 2, 2005, respectively. The Defendants AMS and UWLIC did not remove this action until May 23, 2005, well more than thirty days after the receipt of the ". . . initial pleadings set forth the claim for relief. . . ." *See* § 1446(b).

Assuming *arguendo* that AmSouth was fraudulently joined and that the jurisdictional limits of this Court are satisfied, then the Defendants AMS and UWLIC had no more than thirty days from the date they were served with the Complaint within which to remove this case. The only "trigger" relied on by the Defendants for this removal is the Plaintiff's answers to Request for Admissions cited by the Defendants in their Notice of Removal. This is the Defendants' only explanation of why this case suddenly became removable more than thirty days from their receipt of the initial Complaint. This Court must answer the question of why AMS and UWLIC would not have known within thirty days of receiving the initial Complaint that AmSouth was fraudulently joined and that the jurisdictional limits of this Court were established.

The Plaintiff's original Complaint[1] had a nonspecific prayer for relief but did make a claim for punitive damages. The claim was for an indeterminate amount to be determined by a jury. Other courts have held that where complaints make nonspecific prayers for relief, but claim punitive damages, the defendant may be able to establish the requisite federal jurisdictional amount. *See Schild v. Tymco, Inc.*, 842 F.Supp. 225 (M.D. La. 1994) and *Fate v. Buckeye State Mutual Ins. Co.*, 174 F.Supp.2d 876 (N.D. Ind. 2001).

The Defendants AMS and UWLIC have not explained in their Notice of Removal why they could not have determined that the jurisdictional limits of this Court were satisfied upon their receipt of the initial Complaint. If a complaint contains sufficient information for the defendant to remove, then the defendant cannot claim the thirty-day period did not commence upon service of the summons and complaint. *Dempsey v. Caterpillar Tractor Co.*, 107 F.Supp. 150 (D.C. NY 1952). The burden

---

[1]      The First and Second Amended and Restated Complaints also had unspecified prayers for relief.

is on the defendant to timely remove and to scrutinize the case if the pleading is indeterminate, and absent fraud by the plaintiff or pleadings which would provide no clue that the case is not removable, the thirty-day period begins to run from the initial pleading. *Kaneshiro v. No. American Co. for Life & Health Ins.*, 496 F.Supp. 452 (D.C. Haw. 1980).

What possible diligence have the Defendants AMS and UWLIC offered for their inaction during the first thirty days after their receipt of the initial Complaint? The Notice of Removal is void of any such commentary.

**The Defendants' prior actions in an identical case are indicative of their knowledge of this case and the putative amount in controversy.** The Notice of Removal filed in *Curtis B. Davis v. American Medical Security, Inc., et al.*, in the United States District Court for the Northern District of Alabama, Middle Division, CV-03-AR-1865-M, alleges that the $75,000 jurisdictional limit was satisfied. The *Curtis Davis* case is identical to this case.[2] In the *Curtis Davis* action, AMS and UWLIC alleged that the jurisdictional requirement of federal court had been proven by a preponderance of evidence by their reference to the unspecified prayer for relief by the Plaintiff, the Plaintiff's claim for punitive damages, mental anguish and other lawsuits which had resulted in substantial awards in excess of $75,000. (See Exhibit A, Notice of Removal.) The Defendants allege in their Notice of Removal in this case that the removal was triggered by their receipt of the Plaintiff's responses to the Defendants' Request for Admissions. Yet, their prior actions provide a strong indication of their belief about the putative value of these types of cases. In support of that position, the Defendants cite a case that actually helps the Plaintiff in arguing against this Court's jurisdiction.

---

[2] The undersigned law firm represents Curtis B. Davis in the aforementioned action which has since been remanded to the Circuit Court of Etowah County and is currently pending in state court. This case is also being defended by Burr & Forman.

In *Golden Apple Mgt. Co., Inc. v. GEAC Computers, Inc.*, 990 F.Supp. 1364, 1368 (M.D. Ala. 1998), the Court stated, "[t]herefore, although the face of the Complaint does not allege damages to satisfy the minimum requirement for federal jurisdiction, GEAC is sufficiently on notice that this is an area for inquiry."

If, in fact, the Defendants believed that the jurisdictional limit might be present, the Defendants should have taken action within thirty days of receiving the initial Complaint.[3]  Instead, they waited until they had filed Motions to Dismiss in state court and received an oral ruling from the judge denying those motions.

Likewise, if AmSouth had been fraudulently joined, the Defendants were aware of that fact upon receipt of the initial Complaint.  **The Defendants have made identical arguments in another case filed against American Medical Security, United Wisconsin Life and AmSouth.**  In *Hicks v. United Wisconsin Life, et al.*, in the United States District Court for the Southern District of Alabama, Southern Division, CV-02-0469-P-M, the Defendants AMS and UWLIC removed a case identical to this case on the basis that AmSouth had been fraudulently joined.  (See report and recommendation and order attached as Exhibit B.)  AMS and UWLIC contended in the *Hicks v. United Wisconsin Life Ins. Co., et al.,* case that claims made against AmSouth for fraud, fraudulent concealment, conspiracy, breach of fiduciary duty and breach of contract were fraudulently plead to avoid federal jurisdiction.  Judge Pittman and U. S. Magistrate Judge Milling disagreed with this argument and held that AmSouth had not been fraudulently joined and that the Plaintiff had plead sufficient facts to state a claim against AmSouth.  The *Hicks* decision is instructive as to the

---

[3]     The amended complaint did not change the general prayer for relief and is identical to the general prayers for relief contained in the initial pleading.

Defendants' knowledge of the potential fraudulent joinder argument three years in advance of the removal of this case.

The Defendants have not satisfied their burden to "scrutinize the case and remove it in a timely fashion." *NAEF v. Masonite Corp.*, 923 F.Supp. 1504, 1512 (S.D. Ala. 1996). At a minimum, both of the Defendants ". . . could have intelligently ascertained that the action was removable . . ." within thirty days of their receipt of the initial Complaint. *Id.* Supporting authority for the proposition that this case was not timely removed by the Defendants is found in *Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298 (M.D. Ala. 2003). In that case, the Plaintiff sued Celtic Life and a local resident insurance agent alleging, among other things, breach of contract, bad faith negligence and fraud. Thereafter, Celtic removed the case, but did so more than thirty days after its receipt of the initial pleading. In response, the Plaintiff filed a motion to remand and argued that the removal was filed more than thirty days after the original complaint was served and, therefore, the removal was untimely and should be remanded. In considering these arguments, the Court stated the following with regard to the controlling analysis for determining exactly when Celtic knew or should have known that the case was removable:

> The Court will thus review Celtic's argument as well as the pleadings and depositions to determine when Celtic could have first intelligently ascertained that this case was removable . . . Celtic must also use any information it may be charged with under the law in determining when a case first becomes removable. In other words, Celtic cannot base the timing of its notice of removal on information allegedly obtained for the first time in a deposition when it legally possessed that information at an earlier date.

*Id.* at 1302.

After evaluating all arguments advanced by Celtic, the Court concluded that the removal was untimely given that it occurred more than thirty days after Celtic could have intelligently ascertained

that no cause of action existed against the local agent. With such knowledge, Celtic's thirty-day window of opportunity to invoke federal jurisdiction began running when Celtic was served with the complaint.

Assuming *arguendo* that the factual arguments advanced by the Defendants that the amount in controversy has been established and that AmSouth was fraudulently joined, then the Defendants had full and complete access to this information within thirty days of being served with the initial Complaint. **What evidence of their knowledge can be stronger than their prior actions?** AMS and UWLIC have attempted to remove identical cases on the basis that the jurisdictional limit had been satisfied with an unspecified prayer for relief that included a demand for punitive damages. Likewise, they have argued to a federal court that AmSouth was fraudulently joined in a previous action that is identical to this case. The Defendants have not advanced an argument in their Notice of Removal that the information regarding AmSouth's presence as an alleged fraudulently joined Defendant or the amount in controversy could not have been available to them to timely remove this case within thirty days of receiving the initial Complaint.

The Defendants' prior actions in the *Davis* and *Hicks* cases are "clues" that this case, for argument purposes, was removable within thirty days of their receipt of the initial Complaint. *See Naef v. Masonite Corp.,* 923 F. Supp. 1504 (S.D. Ala. 1996); *see also Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727 (11th Cir. 1982). Therefore, for the foregoing reasons, the Defendants' removal of this action was untimely and this action should be remanded to state court.

### B.    Defendant AmSouth was Not Fraudulently Joined to Defeat this Court's Jurisdiction

Contrary to the arguments of the Defendants AMS and UWLIC, the Defendant AmSouth was

not sued in this case for the sole purpose of defeating federal jurisdiction. AmSouth was sued because it is an integral party to the "Prescription for Good Health Trust" whereby the Plaintiff's group health insurance policy was issued, maintained and administered. (See Exhibit B to Plaintiff's Motion to Remand.) The Plaintiff has sued AmSouth because:

1.     AmSouth was the trustee of the "Prescription for Good Health Trust" through which the Plaintiff's group health insurance policy was issued;

2.     AmSouth was the policyowner of the group health insurance policy through which the Plaintiff participated in the group health agreement;

3.     AmSouth had a fiduciary responsibility to the participants, such as the Plaintiff, to act in the best interest of the trust and its beneficiaries;

4.     AmSouth had a duty to communicate important information to the Plaintiff because of AmSouth's role as a fiduciary;

5.     AmSouth made misrepresentations and committed fraud through agents who worked for the "Prescription for Good Health Trust" in the solicitation and sale of health insurance under the trust agreement;

6.     AmSouth agreed to procure group health insurance for the Plaintiff, as a participant of the trust; and

7.     AmSouth had contractual duties to the Plaintiff pursuant to the trust agreement.

The Plaintiff has supplied this Court with a copy of the trust agreement. Despite the Defendants' characterizations of the meaning of this agreement, the clear language of the agreement does not relieve AmSouth of the aforementioned duties. Barbara Watson, an AmSouth employee,

testified in *Shirley Wadsworth v. United Wisconsin Life Ins. Co., et al.*,[4] that AmSouth had a duty to procure group health coverage under the trust agreement for the participants. (Exhibit C, pp. 59-60.) She understood the distinction between group and individual coverage. (Exhibit C, pp. 119-120.) Nor does the trust agreement, despite the Defendants' characterizations, indicate that AmSouth was not involved in the tier rating process or was not knowledgeable of it and, therefore, failed to communicate this information to the beneficiaries[5] of the trust arrangement. AmSouth received inquiries from the U. S. Department of Labor about many issues related to the trust and policy, including premium increases. (See Exhibit F to Plaintiff's Motion to Remand.) AmSouth was paid for its role as trustee of this "discretionary trust." (See Exhibits E and G to Plaintiff's Motion to Remand.)

The test is not whether the Plaintiff is going to prevail against AmSouth, but whether the Plaintiff states a possible claim against AmSouth. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Cir. 1989). Judge Thompson in *Wright v. Metropolitan Life Ins. Co.*, CV-99-T-1241-N (Nov. 23, 1999), remanded a case where fraudulent joinder was the basis for removal. In so doing, Judge Thompson recognized Met Life's attempts to veil fraudulent joinder with a cloak of merits-based arguments and rejected Met Life's attempted end run around fraudulent joinder principles. The Court reasoned:

> In addition and alternatively, it must be kept in mind that the issue before the Court is fraudulent joinder, not mistaken joinder. *See James F. Archibald, III,* note, reintroducing fraud to the doctrine of fraudulent joinder, 78 Va.L.Rev. 1377, 1398

---

[4]     Pending in the Circuit Court of Montgomery County, Alabama, CV-02-2850-H.

[5]     Watson testified that the insureds are the intended beneficiaries of the "Prescription for Good Health Trust." (Exhibit C., p. 129.)

(1992).  The issue before the Court is whether the plaintiff sought to join the resident defendant with the specific intent to defeat diversity jurisdiction.  The fraudulent joinder test – whether a cause of action exists against a resident defendant – is nothing more than a rough proxy for this intent determination; the test obviates the need to look at the actual motive of the plaintiff or her attorney.  However, where there are other circumstances that point away from the presence of intentional fraud, even in the face of perhaps a weak case against a resident defendant, these other circumstances should not be overlooked.

All the Plaintiff need do is state a "colorable" claim against the nondiverse Defendant to defeat removal jurisdiction.  In *Brazina v. Paul Revere Life Ins. Co.*, 271 F.Supp.2d 1163 (N.D. Cal. 2003), the Court refused to find fraudulent joinder where a claim was made against the California Insurance Commission.  Even though the claim was unique, the Court held that a "colorable" claim had been made against the insurance commissioner that would preclude a finding of fraudulent joinder.  In that case, a claim had been made for disability benefits and the Plaintiff alleged the California insurance commissioner had engaged in conduct resulting in the denial of these disability benefits.  While not specifically recognized by statute or common law, the court held that the claim was, nonetheless, colorable so as to preclude federal jurisdiction.

The Defendants AMS and UWLIC assert that each cause of action plead in the Plaintiff's Complaint fails to state a claim against AmSouth.  The Plaintiff will address each area as raised by the Defendants in their Notice of Removal.

### (i)  The Plaintiff States Recognizable Fraud Claims against AmSouth

Alabama common law and Ala. Code §§ 6-5-101, 102, 103 and 104 provide causes of action for varying degrees of fraud, including claims for active misrepresentations and fraudulent concealment.  Alabama law recognizes that "fraud by one accompanied by damage to the party defrauded in all cases gives a right of action."  *See* Ala. Code § 6-5-100 (1975).  In Alabama a fraud

13

action may be commenced against an agent, as well as the principal, for the agent's fraudulent acts. *Standard Oil Co. v. Gunn*, 176 So. 332 (Ala. 1937).

The Plaintiff in the Complaint has set out facts and consequences which would constitute fraud under Alabama law pursuant to Alabama statutes and common law theories. These claims have been made directly against AmSouth. (See Complaints as amended.) Alabama law recognizes these claims. *Crommelin v. Capital Broadcasting Co.*, 195 So.2d 524 (Ala. 1967).

AmSouth is not a remote party to this transaction. They are signatories to the "Prescription for Good Health Trust" agreement and identified as the "Trustee." The agreement was signed by an officer of AmSouth. The trust agreement also identifies AmSouth as the policyowner of the very contract that issued certificates of insurance to the Plaintiff. In the group insurance policy, AMS identifies itself as ". . . administrator for the Trustee. . . ." (See Exhibit B to Plaintiff's Motion to Remand.) The Complaint alleges that AmSouth or its agents engaged in conduct that resulted in monetary damage to the Plaintiff. In rejecting AMS and UWLIC's argument that AmSouth was fraudulently joined in *Hicks v. United Wisconsin Life*, Magistrate Judge Milling stated:

> If Defendant AmSouth is a necessary component for the sale of insurance in Alabama, then Defendants must face their legal challengers in the state courts. Defendant should have known that a business arrangement which necessitated the inclusion of an Alabama business would mean that they would not be able to defend their actions in the federal courts, at least not on the basis of diversity.

(See Exhibit B, p. 6.)

AMS and UWLIC also allege that the statute of limitations for the Plaintiff's fraud claims would bar such a claim. In the Complaint, First Amended Complaint and Second Amended Complaint, the Plaintiff clearly invokes the tolling provisions of Ala. Code (1975) § 6-2-3 which states:

14

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

In the Complaint, the Plaintiff alleges he did not learn of the Defendants' methods to calculate the premiums until receipt of the *Gadson* class notice. The Defendants has offered no evidence that the Plaintiff knew or should have known that the calculation method known as "tier rating" had been communicated to the Plaintiff. The Defendants simply allege that the Plaintiff's premiums increased and that this should place the Plaintiff on notice of a problem.

In Alabama, the Insurance Department does not regulate insurance premiums; therefore, increases are commonplace. The Defendant has offered no proof that the Plaintiff was ever advised, prior to receipt of the class action notice in *Gadson v. United Wisconsin Life Ins. Co., et al.*, that the Defendants were using an illegal method to calculate renewal premiums. The Plaintiff terminated the policy in 1997. This does not mean that the Plaintiff's cause of action had been discovered or should have been discovered by exercise of reasonable diligence. *See Ex parte Seabol*, 782 So.2d 212 (Ala. 2000). In *Ex parte Seabol*, the Alabama Supreme Court held that the involvement of a lawyer in a real estate transaction might lead the plaintiff to believe that certain representations were, in fact, true notwithstanding the plaintiff's receipt of certain information that might give rise to notice of the invalidity of a mortgage lien. The Court held that the plaintiff might not have been aware of the wrongful omission of the lawyer until the plaintiff contacted another lawyer after the transaction had been concluded. In *Potter v. First Real Estate Co.*, 844 So.2d 540 (Ala. 2002), the Alabama Supreme Court held that the trial court erred in granting a summary judgment based on a finding that a home buyer was not put on notice that his house was in a flood plain. The Court held that a jury

15

could find that the two year statute of limitations did not begin running at the closing of the purchase but rather when the Plaintiff discovered that the house was in a flood plain. The Court found that the broker had a "special relationship" with the buyer.

The question of when a plaintiff should have discovered the existence of a cause of action for fraud is almost always a question of fact. *Johnson v. Life Ins. Co.*, 581 So.2d 438 (Ala. 1991).

Certainly, a unique and special relationship existed between the Plaintiff and AmSouth under the "Prescription for Good Health Trust" agreement. AmSouth, as trustee, had a duty to obtain a "group" health policy for the Plaintiff – not an individual policy. (Exhibit B to Plaintiff's Motion to Remand.)

AmSouth has thrust itself into a health insurance trust arrangement in exchange for monetary gain. At a minimum, AmSouth would have had a duty to disclose to the Plaintiff the tier rating method being used by AMS, UWLIC and AmSouth on renewal premiums. Ala. Code (1975) § 6-5-102 recognizes a claim for suppression of material fact. The obligation to communicate material facts under this section is driven by the "confidential relations of the parties or by the particular circumstances of the case." *See* Ala. Code (1975) § 6-5-102. *See also Kay v. Pawnee Constr. Co.,* 680 F.2d 1360 (11th Cir. 1982); *Trio Broadcasters, Inc. v. Ward*, 495 So.2d 621 (Ala. 1986). Alabama recognizes that, in its simplest terms, a "trust" is a confidence reposed in one person for the benefit of another with respect to property held for the other person's benefit. *Gordon v. Central Park Little Boys League,* 119 So.2d 23 (Ala. 1960). An instrument in writing signed by the parties at the time of the trust's creation suffices to create a trust if the subject matter and objects of the trust are manifested in the agreement with reasonable certainty. *First Ala. Bank of Tuscaloosa, N.A. v. Webb*, 373 So.2d 631 (Ala. 1979). The Defendants AMS and UWLIC have recognized that

16

AmSouth is a trustee because they have so designated AmSouth in their Notice of Removal in recognition of AmSouth's role in the "Prescription for Good Health Trust." By accepting this trust, AmSouth is bound to its duties imposed by the instrument and by law and is subject to liabilities from any violation of their duties. *Belcher v. Birmingham Trust Nat'l. Bank*, 348 F.Supp. 61 (N.D. Ala. 1968).

The Eleventh Circuit Court of Appeals recognized under Alabama law that the broadest delegation of discretion to a trustee is bound by the limitation that a trustee cannot act from a motive other than accomplishment of the purpose of the trust. If the trustee deviates from its duties under the trust, the trustee is open to legal liability. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir. 1990), *cert. denied* 111 S.Ct. 712 (498 U.S. 1040), 112 L.Ed.2d 701.

In *Metropolitan Life Ins. Co. v. James*, 191 So.2d 352 (Ala. 1939), the Alabama Supreme Court held that a person standing in a confidential relationship with another person by virtue of a trust arrangement must safeguard the interest of that person with the same fidelity that the trustee would safeguard its own interests. Failure to do so and the withholding of material facts is a breach of their trust duties and can constitute a legal fraud regardless of intent to deceive.

As Judge Milling stated in *Hicks v. United Wisconsin Life Ins. Co.*:

> There is no apparent dispute that the Hicks are participants in the agreement. At the very least, the Court finds that Defendants have not demonstrated otherwise. Though Defendants have argued that AmSouth's role as trustee did not establish a fiduciary duty toward the Hicks, the Court finds that they have failed to prove that there is "no possibility the Plaintiffs can establish any cause of action against the resident Defendant." Citing *Cabalceta*, 883 F.2d at 1561. This is so because AmSouth's representative has stated that AmSouth's participation in a trust was necessary to conduct business in Alabama. Specifically, Watson stated that the agreement was set up the particular way it was because, "It was a legal precondition for doing business, insurance business, in Alabama."

(Exhibit B, p. 5.)

The resolution of these issues, in essence, requires a merits-based analysis of issues concerning the existence of a fraud and its discovery. The Defendants have failed to establish that there is no possibility that the Plaintiff has stated a claim in his complaint. *Green v. Amerada Hess Corp.*, 707 F.2d 201 (5th Cir. 1993), *reh'g denied* 714 F.2d 137; *cert. denied* 104 S.Ct. 701.

### (ii) The Plaintiff Makes Valid Claims for Breach of Contract and Breach of Fiduciary Duty Against AmSouth

It is beyond dispute that AmSouth is a party to the insurance contract ultimately issued to the Plaintiff. As the policyowner of the group health policy and trustee of the trust arrangement, AmSouth has accepted a central role in the stated purpose of the trust to "provide group insurance programs for participants through contracts issued to the trustee by insurers or affiliates of insurers." (See Exhibit B to Plaintiff's Motion to Remand.) The Plaintiff has alleged in the Complaint, as amended, that AmSouth breached its contract to provide group insurance coverage. When one contracts with another and expressly promises to provide a benefit or perform an act, he is liable in contract for failure to perform. *First Alabama Bank of Montgomery, N.A. v. First State Insurance Co., Inc.,* 899 F.2d 1045, *reh'g. denied* 909 F.2d 1493 (11th Cir. 1990). Generally, whether a breach of contract has occurred depends upon the facts of the case and is usually a question for the jury to resolve. *Conference America, Inc. v. Telecommunications Co-Op Network, Inc.*, 885 So.2d 772 (Ala. 2003).

The elements of a breach of contract action in Alabama are (1) the existence of a valid contact binding the parties, (2) the plaintiff's own performance, (3) defendant's nonperformance or breach and (4) damages. *Teitel v. Wal-Mart Stores, Inc.*, 287 F.Supp.2d 1268 (M.D. Ala. 2003). By

proving the four above-mentioned elements, the Plaintiff establishes a *prima facie* breach of contract claim. *Plantation South Condominium Assn., Inc. v. Profile Mgt. Corp., Inc.*, 842 So.2d 663, *reh'g. denied* (Ala. Civ. App. 2001). A person or entity may be sued for breach of contract related to their failure to procure insurance policies. *Reliance Ins. Co. v. Wyatt*, 540 So.2d 688 (Ala. 1989); *Geer Brothers, Inc. v. Crump*, 349 So.2d 577 (Ala. 1977).

The Defendants AMS and UWLIC take issue with the Plaintiff's breach of contract claim by asserting that the statute of limitations has expired. (See Notice of Removal.) The Defendants request the Court to engage in a merits-based analysis; however, the statute of limitations has not expired on the Plaintiff's breach of contract claims. Ala. Code (1975), § 6-2-34(4) states that a six year statute of limitations applies to "actions founded on promises in writing not under seal. . . ." The Defendants argue that the Plaintiff's breach of contract claims are barred because the Plaintiff terminated his insurance policy in 1997. The Plaintiff's claims for breach of contract have been tolled. The *Gadson v. United Wisconsin Life Ins. Co.*, *et al.*, class action was filed in 2002. The United States Supreme Court has stated that all persons who participate in a class action, as class members, have their statute of limitations equitably tolled until the conclusion of the class action or until the class member opts out of the class action. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). The Alabama Supreme Court adheres to this same tolling principle. *See First Baptist Church of Cirtonelle v. Citronelle-Mobile Gathering, Inc.*, 409 So.2d 727 (Ala. 1981) and *White v. Sims*, 470 So.2d 1191 (Ala. 1985). AMS, UWLIC and AmSouth are defendants to the *Gadson* class action. The Plaintiff was a class member from the filing of that complaint until the Plaintiff opted out

on August 11, 2004. During the intervening two years, the Plaintiff's breach of contract action[6] was equitably tolled for class members who were identified in the class action. Reference to Exhibit J in Plaintiff's Motion to Remand provides that on April 6, 2004, the Circuit Court of Montgomery County conditionally certified the *Gadson* case for purposes of the proposed settlement class. The settlement class was defined to include:

> All persons and entities (including the named plaintiff) in Alabama or Georgia who, at any time purchased or renewed in Alabama or Georgia a certificate of medical insurance from United Wisconsin Life Insurance Company.

As previously set forth in the procedural aspects of this case, the Plaintiff received the class notice and opted out of the class action.

The United States Supreme Court has held in *Crown, Cork & Seal, Inc. v. Parker*, 462 U.S. 345 (1983) that equitable tolling of limitation periods for class members' claims in connection with a class action is extended to those class members who elect to "opt out" in a Rule 23(b)(3) class action. In addressing the sound logic of equitable tolling related to class actions, the Court stated in *American Pipe & Constr. Co., et al. v. Utah*, 414 U.S. 538:

> A federal class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. Under the circumstances of this case, where the district court found the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," Rule 23(a)(3)(4), the claim members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs.

*Id.* 551.

---

[6]    The Plaintiff's actions for fraud, concealment and breach of fiduciary duty were likewise tolled.

20

This clear and unequivocal statement from the United States Supreme Court provides protection to all members of the class once the class action is filed so as to toll the statute of limitation as to "all" of those parties who subsequently participate in the suit. Without question, AmSouth is participating in the class action as a party Defendant. Without question, the Plaintiff participated in the class action as a class member until the Plaintiff elected to opt out. The Plaintiff then promptly filed this lawsuit well within the six year limitation period for contract actions in Alabama.

Even if there is doubt in this Court's mind as to whether the statute of limitations has been tolled against AmSouth, this doubt, as it applies to the Court's analysis of the fraudulent joinder rules for determining federal jurisdiction must be resolved in the Plaintiff's favor. ". . . [I]f it is possible for the Plaintiff to state a cause of action under any one of these theories, then the Defendants cannot prove that the [agents] were fraudulently joined." *Bedford v. CT Mutual Life Ins. Co.* 916 F.2d 1211, 1215 (M.D. Ala. 1996). To hold otherwise,

> . . . would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if the notice of class suit did not reach them until after the running of the limitation period would be to file either earlier individual motions to join or intervene as parties – precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for fair and efficient adjudication of the controversy."

*American Pipe & Constr. Co., et al. v. Utah*, 414 U.S. 538, 551, *citing* Rule 23(b)(3).

The Defendants' argument that the limitations period on the Plaintiff's breach of contract action has run would require a splitting of the Plaintiff's cause of action and require the Plaintiff to undertake a duty to initiate a cause of action against AmSouth when the subject matter of the lawsuit is being controlled by a class action filed and/or certified under Rule 23 of the Alabama Rules of Civil Procedure. The U. S. Supreme Court held:

> Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. It follows that even as to asserted class members who were unaware of the proceeding brought in their interest or who demonstrably did not rely on the institution of those proceedings, the latter running of the applicable statute of limitations does not bar participation in a class action and its ultimate judgment.

*American Pipe & Constr. Co.*, *et al. v. Utah*, 414 U.S. 538, 552. The Court went on to hold that the tolling of the statute of limitations is the fairest method to handle individual claims affected by a person's membership in a class action. The Court stated:

> We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

*Id.* 554.

The Plaintiff has set out facts and consequences which would constitute a breach of contract action under Alabama law. The six year statute of limitations for contract actions has not expired contrary to the Defendants' assertion in their Notice of Removal. Again, the Plaintiff states a "colorable" claim under Alabama law which would preclude a determination that the Plaintiff had engaged in "outright fraud," misjoinder or fraudulent joinder. *Moorer v. American Home Products Corp.*, in the United States District Court for the Middle District of Alabama, Northern Division, CV-00-T-1477-N.

### (iii)   The Plaintiff has Stated Viable Claims of Breach of Fiduciary Duty Against AmSouth

As earlier stated, a person standing in the confidential relationship to another in a position of trust who is charged with the obligation of safeguarding the interests of that person has a fiduciary responsibility, the breach of which gives rise to a cause of action. *Metropolitan Life Ins. Co. v.*

*James*, 191 So.2d 352 (Ala. 1939).  In their Notice of Removal, the Defendants principally raise the statute of limitations for their basis for claiming that AmSouth has been fraudulently joined.  In so doing, the Defendants recite that a two year statute of limitations applies to breach of fiduciary duty claims.  The Plaintiff finds no such indication in Ala. Code (1975) § 6-2-38.  In fact, because the fiduciary relationship between the Plaintiff and AmSouth was established by virtue of a written trust agreement, it is the Plaintiff's position that the six year statute of limitation period provided for in Ala. Code (1975), § 6-2-34(4) applies.  The Plaintiff's action for breach of fiduciary duty is founded on the promises contained in the "Prescription for Good Health Trust" agreement.

The Plaintiff's breach of fiduciary duty claims will also be tolled by the equitable class action tolling provisions established by the U. S. Supreme Court in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *Crown, Cork & Seal, Inc. v. Parker*, 462 U.S. 345 (1983).  The Plaintiff adopts and incorporates its previous argument with regard to equitable tolling of this limitation period with respect to the class action filed by Vivian Gadson against AmSouth, AMS and UWLIC.  By its own admission, in the Notice of Removal, the Defendants AMS and UWLIC assert that the statute of limitations for breach of fiduciary duty would not begin running until the trust agreement was terminated.  In *McCormack III v. AmSouth Bank, N.A.*, 759 So.2d 538 (Ala. 1999), the Court held that a breach of fiduciary duty claim begins to run with termination of the trust.  Arguably, this would indicate that the statute of limitations for breach of fiduciary duty claims did not begin running until the overall "Prescription for Good Health Trust" agreement terminated.  As of 2003, the "Prescription for Good Health Trust" still existed and had not been terminated. (Exhibit C, pp. 171-172.)  Upon information and belief, this trust agreement is still in effect today.  Notwithstanding that argument, if this Court accepts the Defendants' proposition that the trust agreement terminated when

the Plaintiff ceased being a member of the "Prescription for Good Health Trust" as a certificate holder, then the equitable tolling provisions regarding class actions would, nonetheless, toll the Plaintiff's breach of fiduciary duty claim.

The Plaintiff has stated a sufficient claim that he has evidence which would support a finding of the trustee's mismanagement of the trust which, at a minimum, would demonstrate a failure to perform the trustee's duty of loyalty to the beneficiaries, including the Plaintiff. *First Alabama Bank of Huntsville, N.A. v. Spragins*, 515 So.2d 962 (Ala. 1987). Such action results in a compensable loss for the beneficiary. *Id.*

**(iv)** **The Plaintiff has Previously Conceded the Negligence and Wantonness Claims Should be Dismissed**

In the state court proceeding below, the Plaintiff had conceded to the state court that the negligence and wantonness claims, as a separate cause of action, should be dismissed and had agreed to do so. Therefore, the Plaintiff pretermits any discussion of the negligence and wantonness claims on the basis of the Court's indication that it would order the dismissal of these claims based on the Plaintiff's consent.

**(v)** **The Amount in Controversy**

The Plaintiff has previously argued extensively that the Defendants AMS and UWLIC knew that the potential amount in controversy in this case exceeded $75,000. In responses to Request for Admissions, the Plaintiff did deny that he would not seek damages in excess of $75,000. In *Buchannan v. Lott*, 255 F.Supp.2d 326 (D.C. NJ 2003), the district court held that the plaintiff's attorney's refusal to stipulate that damages would not exceed $75,000 did not shed any light on the

24

likelihood of the plaintiff's case exceeding the $75,000 threshold for federal court jurisdiction. In so holding, the Court granted the Plaintiff's motion to remand.

At best, the request for admissions responded to by the Plaintiff indicated the Plaintiff's refusal to limit his potential recovery in this lawsuit. The denials contained in the request for admissions do not shed light on the value of this case insofar as this Court's jurisdictional limit is concerned.

The question is whether AMS and UWLIC have proven by a preponderance of evidence the amount in controversy within thirty days of their receipt of the initial complaint. Their own action in removing identical cases and arguing that the $75,000 jurisdictional threshold was satisfied with an unspecified prayer for relief and a reference to punitive damage verdicts was and should have been apparent to them upon their receipt of the initial complaint. Their actions in removing two prior, identical cases expose their disingenuous attempt to establish jurisdiction with the request for admissions that they now contend constituted an "other paper" under 28 U.S.C. § 1446(b). The Defendants should not be allowed to manufacture a discovery device to trigger federal jurisdiction when their previous actions in identical cases indicate their knowledge and appreciation of the putative value of this case and others.

### (vi)   State Court Orders on the Defendants' Motions to Dismiss and the Class Action Indicate Viable Claims Against AmSouth

Attached as Exhibit D, the Plaintiff references the Court to numerous orders entered by state judges in actions filed against AMS, UWLIC and AmSouth arising from their tier rating practices under the group health insurance plan offered and sold through the "Prescription for Good Health Trust." These orders indicate a rejection of the Defendants' argument that the Plaintiff does not state a valid claim against AmSouth.

The existence of the *Gadson v. United Wisconsin Life Ins. Co.* class action is but another indication of the validity of claims made against AmSouth by the Plaintiff. If AmSouth were not a legitimate Defendant in the *Gadson* case, why would it be a named party and receive a release for consideration paid to the class? AmSouth's existence as a Defendant in the *Gadson* class action raises another "possibility" that the Plaintiff has stated viable and valid claims against AmSouth for its conduct related to the group health insurance policy in which the Plaintiff participated.

## **CONCLUSION**

There is no dispute that AmSouth is a nondiverse Defendant – being a citizen of the state of Alabama. AmSouth has not been fraudulently joined in this action. There are numerous possible claims asserted by the Plaintiff which would attach liability to AmSouth's participation and central role as the trustee and policyowner of the group health insurance policy that is the subject of this lawsuit.

The removing Defendants, AMS and UWLIC's, conduct in previously removing identical cases, indicates their knowledge and appreciation of the amount in controversy and the potential fraudulent joinder argument with respect to AmSouth. There is no dispute that the removing Defendants did not remove this action within thirty days of their receipt of the initial complaint. Therefore, the removal of this action is untimely pursuant to 28 U.S.C. § 1446(b).

WHEREFORE, the Plaintiff respectfully asks that this case be remanded to the Circuit Court of Macon County, Alabama from which it was improvidently removed.

s/Ted L. Mann
Ted L. Mann
AL State Bar No.: ASB-2219-N36T
Attorney for Plaintiff, Robert Bowen

Mann, Cowan & Potter, P.C.
2000-B SouthBridge Pkwy., Ste. 601
Birmingham, AL 35209
Phone: (205) 879-9661
Fax: (205) 879-9663
E-mail: ted@mcplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Keith Thomas, Esq.
P. O. Box 830899
Tuskegee, AL  36083

James E. Fleenor, Jr., Esq.
Harlan F. Winn, III, Esq.
Michael J. Clemmer, Esq.
Battle, Fleenor, Green, Winn & Clemmer, LLP
Financial Center, Ste. 1150
505 N. 20th St.
Birmingham, AL 35203

Ricky J. McKinney, Esq.
D. Brian O'Dell, Esq.
Christian W. Hancock, Esq.
Burr & Forman, LLP
3100 SouthTrust Tower
420 N. 20th St.
Birmingham, AL 35203

I hereby certify that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:

Fred D. Gray, Jr., Esq.
Stanley F. Gray, Esq.
Gray, Langford, Sapp
P.O. Box 830239
Tuskegee, AL 36083

Respectfully submitted,

s/Ted L. Mann
Ted L. Mann
Mann, Cowan & Potter, P.C.
2000-B SouthBridge Pkwy., Ste. 601
Birmingham, AL 35209
Phone: (205) 879-9661
Fax: (205) 879-9663
E-mail: ted@mcplaw.com
AL State Bar No.: ASB-2219-N36T